# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TODD SUTKA, on behalf of himself
and others similarly situated,

     Plaintiff,

v.                           Case No. 2:17-cv-10669-PDG-SDD

YAZAKI NORTH AMERICA INC.,

     Defendant.

_____/

| | |
|---|---|
| **PHILIP J. GOODMAN, P.C.** | **JACKSON LEWIS P.C.** |
| Philip J. Goodman (P14168) | Allan S. Rubin (P44420) |
| 280 N. Old Woodward Ave., Suite 407 | Daniel C. Waslawski (P78037) |
| Birmingham, MI 48009 | 2000 Town Center, Suite 1650 |
| 248-647-9300 | Southfield, MI 48075 |
| pjgoodman1@aol.com | 248-936-1900 |
| Attorney for Plaintiff | rubina@jacksonlewis.com |
| | daniel.waslawski@jacksonlewis.com |
| | Attorneys for Defendant |

**BAILEY PEAVY BAILEY COWAN
HECKAMAN PLLC**
Robert W. Cowan
5555 San Felipe St., Suite 900
Houston, Texas 77056
713-425-7100
rcowan@bpblaw.com
Attorney for Plaintiff
_____

## JOINT MOTION TO APPROVE SETTLEMENT

## TABLE OF CONTENTS

*Page(s)*

I.    THE FACTUAL BASIS AND BACKGROUND FOR THE
      INSTANT MOTION ............................................................................1

II.   LEGAL ANALYSIS .............................................................................5

      A.    The Settlement is a Fair and Reasonable Resolution of the
            Disputed Claims .......................................................................8

            1.    No Risk of Fraud or Collusion ........................................8

            2.    The Complexity, Expense and Duration of the Case .......9

            3.    The Likelihood of Success on the Merits .......................10

                  a.    Plaintiff's Likelihood of Establishing
                        Liability ...............................................................11

                  b.    Plaintiff's Likelihood of Establishing
                        Damages ...............................................................13

            4.    Opinion of Counsel ........................................................17

            5.    There Are No Absent Class Members ............................17

            6.    The Public Interest .........................................................18

      B.    Plaintiff's Attorney's Fees and Costs .......................................18

III.  CONCLUSION ..................................................................................22

# TABLE OF AUTHORITIES

*Page(s)*

CASES:

*Arrington v. Mich. Bell Tel Co.*, 2012 U.S. Dist. LEXIS 157362
(E.D. Mich. Nov. 2, 2012) ................................................................5, 6

*Blackmon v. Brookshire Grocery Co.*,
835 F.2d 35 (1st Cir. 1999) ................................................................14

*Bray v. Dog Star Ranch, Inc.*,
2010 U.S. Dist. LEXIS 21983 (W.D. Mich. Mar. 10, 2010) ..............16

*Clements v. Serco, Inc.*,
530 "F.3d 1224 (10th Cir. 2008) .........................................................14

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ...............................................................8

*D'Camera v. District of Columbia*,
722 F.Supp. 799 (D.D.C. 1989) .........................................................16

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
630 F.3d 351 (4th Cir. 2010) .........................................................14, 15

*Dowd v. DirectTV, LLC*,
2016 US Dist. LEXIS 36 (E.D. Mich. Jan. 4, 2016) ..........................15

*Farrar v. Hobby*,
506 U.S. 103 (1992) ............................................................................20

*Farrar v. Hobby*,
113 S. Ct. 566 (121 L. Ed. 2d 494) (1992) .........................................20

*Fegley v. Higgins*,
19 F.3d 1126 (6th Cir. 1994) ...............................................................19

*Garcia v. SAR Food of Ohio, Inc.*,
   No. 1:14-CV-01514, 2015 U.S. Dist. LEXIS 87296 (N.D. Ohio
   July 6, 2015) ........................................................................................15

*Gentrup v. Renovo Servs., LLC*,
   2011 U.S. Dist. LEXIS 67887 (S.D. Ohio Jun. 24, 2011) ...............6, 7

*Gentrup v. Renovo Servs., LLC*,
   2011 WL 2532922 (S.D. Ohio Jun. 24, 2011) .................................6, 7

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ...............................................................7

*Grissom v. Mills Corp.*,
   549 F.3d 313 (4th Cir. 2008)................................................................21

*Hamilton v. Frito Lay, Inc.*,
   2007 U.S. Dist. LEXIS 10287 (M.D. Fla Jan. 8, 2007) ........................8

*Haywood v. North American Van Lines, Inc.*,
   121 F3d 1066 (7th Cir. 1997)...............................................................12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .............................................................................20

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of*
*Am. v. General Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007).................................................................7

*Kritzer v. Safelite Solutions, LLC*,
   2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012) .................18

*Levell v. Monsanto Research Corp.*,
   191 F.R.D. 543 (S.D. Ohio 2000) ........................................................17

*Leverso v. South Trust Bank of Ala., Nat. Assoc.*,
   18 F.3d 1527 (11th Cir. 1994)...............................................................7

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ......................................................5, 6, 7

iv

*Lupien v. City of Marlborough*,
    387 F.3d 83 (1st Cir. 2004) ...................................................................16

*Lutz v. Ameritech Corp.*,
    200 U.S. App. LEXIS 3218 (6th Cir. 2000).........................................12

*Lutz v. Huntington Bancshares, Inc.*,
    815 F3d 988 (6th Cir. 2016) ................................................................12

*Martinez v. Bohls Bearing Equip. Co.*,
    361 F. Supp. 2d 608 (W.D. Tex. 2005) ..................................................6

*McLaughlin v. Richmond Shoe, Co.*,
    486 U.S. 128 (1988) .............................................................................15

*Odil v. Evans*,
    2005 WL 3591962 (M.D. Ga. 2005)....................................................20

*Overnight Motor Transp. Co. v. Missel*
    316 U.S. 572 (1942) ......................................................................14, 15

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010) .............................................................................19

*Reed v. Rhodes*,
    179 F.3d 453 (6th Cir. 1999)................................................................22

*Roman v. Maietta Constr., Inc.*,
    147 F.3d 71 (1st Cir. 1998) ..................................................................16

*Snook v. Valley Ob-Gyn Clinic, P.C.*,
    2015 U.S. Dist. LEXIS 2989 (E.D. Mich. Jan. 12, 2015)................6, 7

*Spencer v. Cent., Servs., LLC*,
    2012 U.S. Dist. LEXIS 4927 (D. Md. Jan. 13, 2012) .........................19

*Urnikis-Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010)................................................................14

v

*Valerio v. Putnam Assocs., Inc.*,
    173 F.3d 35 (1st Cir. 1999) ...................................................................14

*Whiteman v. 1st Class Towing, Inc.*,
    2015 U.S. Dist. LEXIS 66524 (W.D. Mich. April 30, 2015) ..............5

*Williams v. K&K Assisted Living LLC*,
    2016 U.S. Dist. LEXIS 9310 (E.D. Mich. Jan. 27, 2016).....................7

## STATUTES, RULES, AND REGULATIONS:

Fair Labor Standards Act of 1938 ....................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................1

FLSA 213(a)(1) ...............................................................................12

FLSA 2009-3 ...........................................................................14, 15

Ohio Prompt Pay Act........................................................................1

O.R.C. § 4113.15 .............................................................................1

29 C.F.R. § 541.200(a) ...................................................................12

29 C.F.R. § 541.201(b) ...................................................................12

29 C.F.R. § 604................................................................................9

29 C.F.R. § 778.113........................................................................15

29 C.F.R. § 778.114(a) ...................................................................14

29 U.S.C. § 201................................................................................1

29 U.S.C. § 213(a)(1) .......................................................................9

29 U.S.C. § 216(b)........................................................................13, 14, 17, 18

29 U.S.C. § 216(c) ...................................................................................6

29 U.S.C. § 255........................................................................................15

## QUESTION PRESENTED

Whether this Court should approve the settlement of this matter, as set forth in Exhibit A to this motion, and thereafter dismiss this action in its entirety with prejudice and without further costs or fees.

Plaintiff answers:         "Yes."
Defendant answers:       "Yes."

## I.   THE FACTUAL BASIS AND BACKGROUND FOR THE INSTANT MOTION

Now come the parties jointly, by and through their respective counsel, and move this Court for an order approving settlement and in support of their Motion state as follows:

1.    On March 3, 2017, Plaintiff filed a two-count Complaint (ECF # 1) against Defendant in the United States District Court for the Eastern District of Michigan, in which Plaintiff sought relief for, among other things, alleged violations of the Fair Labor Standards Act of 1938, ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Ohio Prompt Pay Act, O.R.C. § 4113.15 et seq. ("OPPA") (collectively the "Action").

2.    In particular, Plaintiff alleged that he and others similarly situated to himself were misclassified as exempt employees, when they really were non-exempt and entitled to overtime.

3.    On April 5, 2017, the Defendant timely moved to dismiss Count II of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and timely filed its Answer as to Count I of Plaintiff's Complaint.  In its Answer, the Defendant denied that Plaintiff or anyone else was misclassified as an exempt employee or that any overtime was due and owing to either the Plaintiff or the putative class. (ECF # 9). Defendant further affirmatively asserted that the Plaintiff (and others similarly situated) were properly classified as exempt under the FLSA, including under the

exemptions set forth in Section 13(a)(1), commonly knowns as the white collar exemptions (ECF # 9, Aff. Def. # 6).

4.     On June 9, 2017, the Court granted Defendant's motion to dismiss Count II and entered an Order dismissing Count II with prejudice. (ECF # 14).

5.      On July 19, 2017, Plaintiff filed his Motion for Conditional Class Certification (ECF # 18).  On August 9, 2017, the Defendant filed its Opposition (ECF # 21) and on August 23, 2017, the Plaintiff filed a Reply (ECF # 22). Thereafter, on November 8, 2017, the Defendant filed its Supplemental Memorandum in Support of its Response (ECF # 32); and on November 15, 2017, Plaintiff filed a Supplemental Reply in support of his Motion (ECF # 34).

6.     On March 12, 2018, the Court denied Plaintiff's Motion for Conditional Class Certification without prejudice (ECF # 35).

7.     On July 10, 2018, the parties participated in a mediation with a Court appointed mediator. At the conclusion of the mediation, the mediator provided the Parties with a mediator's proposal based on his evaluation of the case. On July 17, 2018, both parties accepted the mediator's proposal. The terms of the mediator's proposal are encapsulated in the settlement agreement (hereinafter "Settlement Agreement"), a copy of which is attached hereto as **Exhibit A.**  During these negotiations, all parties were represented by counsel.

8.      In addition to the settlement of this lawsuit, the Parties also reached a separate agreement to separate Plaintiff's employment from Defendant, the terms of which are set forth in a separate agreement (the "Severance Agreement"), whereby Plaintiff has agreed to voluntarily resign from his employment with Defendant. Additional consideration is being paid to Plaintiff on account of Mr. Sutka's separation from the company in accordance with the terms of the Severance Agreement.

9.      The Settlement Agreement contains a provision for proposed costs and fees to be paid to counsel for Plaintiff. The Plaintiff believe that the costs and fees are reasonable and commensurate with the service rendered by Plaintiff's Counsel and the success achieved in this matter and request that they be approved. Commencing since before the case's filing in March 2017, Plaintiffs' counsel has expended well over a combined 200 hours on this matter at a blended rate of $291.62. (The actual, individual lodestar rates for Plaintiff's counsel are Robert Cowan $350, Philip Goodman $350, and Katie McGregor $175.)  Plaintiff's counsel has agreed to limit its total fees to 20 percent of Plaintiff's overall recovery, which means that 20 percent will be deducted for attorneys' fees from both the FLSA settlement amount as well as from the additional consideration that Plaintiff receives as part of the

Severance Agreement, noted in Paragraph 8 above.[1] In addition, Plaintiff's counsel advanced reasonable and necessary costs on Plaintiff's behalf throughout the nearly 17-month litigation, including but not limited to filing fees, deposition costs, expert fees, mediation fees, airfare, and other travel expenses. Such costs do not exceed 17 percent of Plaintiff's overall recovery through the combined FLSA settlement and Severance Agreement. The lodestar attorneys' fee calculation above *alone* greatly exceeds the combination of the 20 percent attorneys' fees and the costs advanced. As part of the settlement, the Defendant has agreed not to object to the award of the fees and costs in the amount provided for in the Settlement Agreement and the Severance Agreement. Defendant takes no other position regarding the reasonableness of the Plaintiff's attorney fees and costs.

10.     Upon approval of the Settlement Agreement, the parties agree that all claims against Defendant will be dismissed <u>with</u> prejudice and <u>without</u> additional costs or attorney fees.

---

[1] Although negotiated in conjunction with the settlement agreement of the FLSA claims, the Severance Agreement provides additional consideration, including the payment of additional attorneys' fees and costs, to Mr. Sutka and his counsel. However, a severance agreement does not require Court approval and is confidential. As such, the parties have not submitted it with this Motion. However, should the Court believe it necessary for its evaluation of the settlement of the FLSA claims in this case, the parties request that the Court permit it to be submitted under seal.

11.     The parties agree that the settlement is a fair and reasonable resolution of a bona fide dispute over issues arising under the FLSA. In particular, although Defendant denies that there were violations of the FLSA, the parties agree that the settlement represents a fair compromise of the alleged claims in the event that plaintiff prevailed on the merits of his case. Because the parties believe that the settlement represents a fair resolution of this matter, they jointly ask that the Court approve the settlement of this action and enter the Order attached hereto as **Exhibit B**, approving the settlement and dismissing this case with prejudice.

12.     Pending consideration of this Motion, the Parties' jointly request that all hearings, discovery, briefing dates and matters not related to this implementation of the settlement be stayed.

## II.     <u>LEGAL ANALYSIS</u>

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (Lawson, J.) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).[2] Thus, when settling disputes under the FLSA, the parties must submit their

---

[2] Courts have differed as to the enforceability of a private settlement of an FLSA claim. *Whiteman v. 1st Class Towing, Inc.*, 2015 U.S. Dist. LEXIS 66524, *2 (W.D. Mich. April 30, 2015) (citing *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) (A settlement agreement "is an enforceable resolution of those FLSA claims predicated on a *bona fide* dispute about time

agreed-upon settlement to the Court for a determination as to whether the settlement is a "fair and reasonable resolution of a bona fide dispute." *Snook v. Valley Ob-Gyn Clinic, P.C.*, 2015 U.S. Dist. LEXIS 2989, 1-3 (E.D. Mich. Jan. 12, 2015) (citing *Lynn's Food Stores*, 679 F.2d at 1354-55); *see also Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *2 (S.D. Ohio Jun. 24, 2011). "If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal citations and quotations omitted); *see Lynn's Food Stores*, 679 F.2d at 1354.

In *Lynn's Food Stores*, the court held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." 679 F.2d at 1352. "First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them." *Id.* at 1353. Alternatively, under section 216(b), when an employee brings "a private action for back wages . . . and present[s] to the district court a proposed settlement,

---

worked and not as a compromise of guaranteed FLSA substantive rights themselves.") (emphasis supplied); *see also Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp.2d 608, 631 (W.D. Tex. 2005) ("[P]arties may reach private compromises as to FLSA claims where there is a *bona fide* dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances.") Due to the difference in the treatment of FLSA settlements by the courts (some requiring approval, while others do not) that the parties seek approval of the settlement in this case.

the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Snook,* 2015 U.S. Dist. LEXIS 2989 at * 1-3 (citing *Lynn Food Stores*, 679 F. 3d at 1352).

To determine whether a proposed FLSA settlement is fair and reasonable, courts consider: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Snook*, 2015 U.S. Dist. LEXIS 2989 at * 2-3, citing *Lynn's Food Stores*, 679 F.2d at 1352-53 (citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. General Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007); *Granada Invs., Inc. v. DWG Corp*., 962 F.2d 1203, 1205 (6th Cir. 1992)). A district court may choose to consider only the factors that are relevant to the settlement at hand. *Gentrup*, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *3.

Once the Court determines that the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Williams v. K&K Assisted Living LLC,* 2016 U.S. Dist. LEXIS 9310 *4 (E.D. Mich. Jan. 27, 2016); *see Lynn Food Stores,* 679 F.2d at 1354; *see also Leverso v. South*

7

*Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). In considering these factors, the Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist. LEXIS 10287 at *4 (M.D. Fla. Jan. 8, 2007) (citing *Cotton v. Hinton.* 559 F.2d 1326, 1331 (5th Cir. 1977)).

**A.   The Settlement is a Fair and Reasonable Resolution of Disputed Claims.**

This settlement reached between the parties is fair and reasonable. The settlement resolves a disputed claim between adverse parties and puts an end to litigation that would be far costlier to pursue given the complexity of issues in this matter. Accordingly, the Parties request that it be approved.

**1.   *No Risk of Fraud or Collusion***

There is no risk of fraud or collusion. The Plaintiff was at all times represented by experienced counsel who litigated aggressively on Plaintiff's behalf. The Defendant was likewise represented by experienced counsel who litigated this matter aggressively on Defendant's behalf. Because conditional certification was denied, this settlement resolves only Plaintiff's individual claim, and no one else is bound by it. Rather any person, if any such persons exist, who believes themselves aggrieved by Defendant remain free to pursue any claims they perceive themselves to have against the Defendant. Hence, this factor favors approval.

## 2.  *The Complexity, Expense and Duration of The Case*

This case presents complex legal and factual issues related to both liability and damages.  In particular this case involves the application of an exemption to the FLSA that Defendant contends is applicable to Plaintiff.  This exemption is the FLSA's administrative exemption contained in 29 § U.S.C. 213(a)(1).

Further complicating this case are the significant factual disputes regarding the Plaintiff and his actual job duties. For instance, Plaintiff claims that while classified as exempt, he performed too much non-exempt work and, therefore, he should have been, but was not, classified as non-exempt (See e.g. ECF # 1, ¶¶ 5, 9-11).  Thus, Plaintiff claims damages for allegedly unpaid overtime.[3]

Defendant disputes these allegations. Contrary to Plaintiff's allegations, Defendant disputes that Plaintiff's primary duties (i.e., most important duties)

---

[3] Defendant—without any legal duty to do so—voluntarily pays its Resident Engineers, such as Plaintiff, what is referred to as straight-time overtime for hours worked in excess of 44.99 hours in a week (See ECF # 1, ¶ 10).   As such, Plaintiff receives additional compensation for any hours worked in excess of 44.99 hours in a single week. 29 C.F.R. § 604 permits an exempt employee to be paid additional compensation for hours worked, such as is the case with Sutka. ("An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis … Similarly, the exemption is not lost if an exempt employee … paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (*e.g.,* flat sum, bonus payment, ***straight-time hourly amount***, time and one-half or any other basis), and may include paid time off.") (Emphasis added).

9

involve manual labor. Rather, Defendant asserts that Plaintiff is properly classified as exempt because his primary duties are exempt in that they entail working with Defendant's customers to address quality issues related to Defendant's products, ensuring the integrity of Defendant's engineering process, and controlling costs. Defendant further contends that Plaintiff does primarily by representing Defendant at meetings, determining the cause of product defects, and proposing solutions to them.

Regardless of the merits of these disputes, their existence will only likely increase the attorneys' fees expended by the parties. Yet regardless of their resolution, Plaintiff's damages will not continue to grow as once the settlement has been approved, he will no longer be employed by Defendant. Given the nature of the claims and the substantial expense involved in pursuing this action, resolution is in all parties' interest. Because resolution of this case will avoid substantial costs, this factor likewise favors approval.

### 3.    *The Likelihood of Success on the Merits*

Plaintiff's likelihood of success on the merits as well as his damages in the event he was successful is uncertain. This further suggests that the settlement is fair and appropriate.

### *a.  Plaintiff's Likelihood of Establishing Liability*

In this case, while disputed by the Defendant, the Plaintiff alleges that Defendant misclassified him as exempt. Plaintiff contends that Defendant should have paid Plaintiff his regular hourly rates for all work performed up to 40 hours, and that he should thereafter have received his overtime compensation at a rate of 1.5 times his regular hourly rate for all hours worked over 40 in a work week. Plaintiff contends that his primary duties have been primarily blue-collar, such as assisting with hands-on production "fixes" on or related to the auto assembly line, reporting and inputting issues into a system database for his superiors to consider and resolve, and inventorying parts.

Defendant, on the other hand, asserts that Plaintiff was properly classified as exempt. Defendant contends that Plaintiff's primary duty is quality control. It is Defendant's position that Plaintiff, spent the vast majority of their time representing Defendant meetings with plant stakeholders, such as quality engineers, managers, front line personnel, and others to address quality issues related to Defendant's products, reporting on quality issues, monitoring the line where Defendant's products are installed for quality issues, initiating, tracking, and reporting on quality issues with Defendant's supplied parts to its customers, and recommending changes to Defendant's products and processes, as well as those of Defendant's customers, and that these duties are exempt administrative duties.  Defendant therefore believes

that Plaintiff, is properly classified as exempt under the FLSA's administrative exemption.

Section 213(a)(1) of the FLSA sets forth the administrative exemption. Employees are properly classified as exempt administrative personnel if:

1. they are compensated on a salary fee basis of not less than $455 per week;

2. their primary duties are the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

3. have their primary duties include the exercise of discretion and independent judgment with respect to matters of significance.

*Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 992 (6th Cir. 2016) (citing 29 C.F.R. § 541.200(a)).

The Department of Labor's regulations recognize that employees, such as Resident Engineers, whose primary duties are to perform quality control functions, are engaged in work directly related to the management or general business operations. 29 C.F.R. § 541.201(b) ("Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . quality control . . . .") and therefore exempt. Numerous Courts, including the Sixth Circuit, have held that similar employees fall under the scope of the administrative exemption. *Lutz v. Ameritech Corp.*, 2000 U.S. App. LEXIS 3218, at *8 (6th Cir. 2000) (field engineers who assess the needs of clients and ensure that solutions are implemented also fall under the exemption); *Haywood v. North American Van Lines,*

12

*Inc.*. 121 F.3d 1066, 1072 (7th Cir. 1997) (coordinator's representation of the company in discussions with customers was a "classic administrative function"). Because there is substantial evidence demonstrating that Sutka was an exempt administrative employee, who was not entitled to overtime, there exists a strong likelihood that he would be found to have been properly classified and thus not entitled to additional overtime. Because liability is in significant dispute, this factor favors approval of the settlement.

### b. *Plaintiff's Likelihood of Establishing Damages*

Additionally, even if found to be misclassified, there is significant uncertainty whether Plaintiff would be entitled to damages. Plaintiff was a salaried employee paid a fixed salary during the statutory time period for all hours worked (See ECF # 1, ¶ 10).[4] As such, Defendant contends that any overtime owed would be calculated on a half time basis (the "Half-Time Rate") and that under the straight time method that Sutka was paid of overtime hours worked, he has received more in overtime than the law requires.

This basis of calculation would in accordance with the approach of numerous courts that have determined that a 50% overtime premium (i.e., halftime rate) is appropriate when calculating unpaid overtime compensation under 29 U.S.C. §

---

[4] The "straight time" rate is calculated by taking Plaintiff's salary and dividing it by 2080 hours (i.e., the number of hours in a work year). Sutka was than compensated at this rate for all hours worked in excess of 45 hours per week.

216(b) in cases, like the instant lawsuit, where the employer and employee had a mutual understanding that: (a) the fixed weekly salary was compensation for all hours worked each work week and (b) the salary provided compensation at a rate not less than the minimum wage for every hour worked. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2010) (citing *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010)); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988). Likewise, the Department of Labor has also adopted this approach. *Desmond*, 630 F. 3d at 356 (approving use of a 50% overtime premium to calculate unpaid overtime compensation in a mistaken exemption classification case) (citing FLSA 2009-3); *see also* 29 C.F.R. § 778.114(a). This is because the employee agreed to receive straight time pay for all hours worked in a given work week and the employee has received that pay. Thus, the loss suffered in such circumstance is the loss of the 50% premium for the overtime hours. *Desmond*, 630 F.3d at 357.

Under the half-time method, overtime is calculated by dividing the salary by the total number of hours worked in a workweek to determine an hourly rate for the workweek. *Desmond*, 630 F.3d at 354-55 (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579-80 (1942)). In order to determine the overtime rate, the regular rate is divided by 2, and overtime is determined by multiplying the half-time

14

rate by the number of overtime worked (i.e., hours over 40). *See*, *e.g.*, *Overnight Motor*, supra; *Desmond*, supra; FLSA 2009-3; 29 C.F.R. § 778.113 ("If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.") Translated to a formula, overtime pay is determined under the half-time method as follows:

$$Salary/Total\ Hours\ Worked\ in\ Workweek = Regular\ Rate$$
$$Regular\ Rate/2 = Halftime\ Rate$$
$$Halftime\ Rate\ x\ Overtime\ Hours = Overtime\ Due$$

If Plaintiff succeeded in established liability and his damages were assessed under this formula for the period of March 3, 2014 through the present (the "Relevant Period"),[5] Plaintiff would have no unpaid overtime due and in fact, he was compensated by in excess of $40,000 more than he the law required him to be paid during this period. In other words, once the payments of straight-time overtime payments that Defendant paid to Plaintiff during the Relevant Period are accounted

---

[5] This three-year look-back period from the date on which Plaintiff filed his complaint assumes that Plaintiff would be able to establish that Defendant's violation of the FLSA was willful.  "[T]he FLSA's statute of limitations is three years for willful violations, but only two years for non-willful violations." *Garcia v. SAR Food of Ohio, Inc.*, No. 1:14-CV-01514, 2015 U.S. Dist. LEXIS 87296, at *18 (N.D. Ohio July 6, 2015) (citing 29 U.S.C. § 255).  The employee has the burden of demonstrating willfulness by showing "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *Dowd v. DirecTV, LLC,* 2016 U.S. Dist. LEXIS 36, 15-16 (E.D. Mich. Jan. 4, 2016) (citing *McLaughlin v. Richland Shoe, Co.,* 486 U.S. 128, 133 (1988)).

for, Defendant actually **<u>overpaid</u>** Plaintiff (i.e., Plaintiff earned more compensation as an employee classified as exempt than he would have made had Defendant classified him as non-exempt). Court that have considered this issue have concluded that equity requires an offset for such overpayments. *See Bray v. Dog Star Ranch, Inc.,* 2010 U.S. Dist. LEXIS 21983 at *46-47 (W.D. Mich. Mar. 10, 2010) (holding, in the context of an FLSA claim for unpaid overtime, that plaintiffs asserting unpaid overtime clams "are only entitled to damages for their unpaid overtime compensation. *See* U.S.C. § 216(b). Plaintiffs are entitled to be made whole; they are not entitled to a windfall at Defendants' expense. Equity requires Defendants be credited with overpayments made to Plaintiffs during their employment.").[6] On the other hand, the Plaintiff disputes entirely the application of any "half-time" overtime method to his compensation.

Regardless, the existence of these legal and factual issues that if decided in Defendant's favor would preclude Plaintiff from any recovery, along with the potentially nonexistent damages Plaintiff suffered if he was in fact misclassified,

---

[6] *See also D'Camera v. District of Columbia,* 722 F.Supp. 799, 803-804 (D.D.C. 1989) (offset for overpayments "fair and equitable" and made Plaintiffs whole, without allowing for a windfall); *Roman v. Maietta Constr., Inc.,* 147 F.3d 71 (1st Cir. 1998) (Defendants entitled to credit for excess payments made as Plaintiff is only entitled to "unpaid overtime"); *Lupien v. City of Marlborough,* 387 F.3d 83 (1st Cir. 2004) (same).

render the proposed settlement fair and reasonable. As such, this factor strongly favors approval of the proposed settlement.

### 4.    *Opinion of Counsel*

Plaintiff's counsel is of opinion that settlement is in the parties' interest. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000). Plaintiff's Counsel has extensive experience litigating FLSA collective and class action cases across the country. Defendant is also represented by experienced counsel. All counsel believe that this settlement is in the best interest of their respective clients. Accordingly, this factor favors approval.

### 5.    *There Are No Absent Class Members*

This is an FLSA case, and as such, no party may be bound by a settlement unless they "opt-in" to the case. 29 U.S.C. § 216(b) (No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.) Except for the Plaintiff, no person has opted into the case. As such, there are no "absent class members" being bound by this settlement, thereby leaving any person who so desires free to pursue their own wage claims, if they believe they exist. As such, this factor also favors approval.

### 6.    *The Public Interest*

The public's interest in judicial economy and amicable dispute resolution favors settlement on the terms voluntarily agreed to by the parties. *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *24 (S.D. Ohio May 30, 2012) (drawing an end to "potentially long and protracted litigation" by virtue of a settlement agreement weighs in the favor of public interest.)  Here, the parties have voluntarily and amicably resolved their dispute via a settlement that all parties have agreed to. Thus, this factor also favors approval.

In this case, all six factors the court is to consider in determining whether a settlement is "fair and reasonable" favor approval of the settlement. As such, the parties ask the Court to approve the settlement and enter an order of dismissal with prejudice.

### B.    Plaintiff's Attorney's Fees and Costs[7]

Section 216(b) of the FLSA provides that "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). An award of attorneys' fees to a prevailing plaintiff under §

---

[7] Defendant lacks sufficient information regarding the time Plaintiff's counsel spent preforming particular tasks and therefore, cannot evaluate the reasonableness of such time. However, because Defendant believes that that the overall fee request is within the range of reasonableness, they have agreed not object to Plaintiff's fee request. Thus, Defendant neither joins nor opposes the argument regarding fees.

216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Here, the parties agreed to an attorney fee payment as set forth in the settlement agreement (Ex. A, § 1(c)).

Congress enacted fee-shifting statutes in order to ensure that federal rights are adequately enforced. Under a fee-shifting statute, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious" action to vindicate the rights protected under the statute. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). The Supreme Court has stated that there is a "strong presumption" that the lodestar figure represents a reasonable attorneys' fee, which may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue,* 559 U.S. at 552.

Moreover, "[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Spencer v. Cent. Servs., LLC*, 2012 U.S. Dist. LEXIS 4927, at *11 (D. Md. Jan. 13, 2012). Awarding employees their attorneys' fees is necessary to "provide an adequate economic incentive for private attorneys" to take FLSA cases and "thereby to ensure competent legal representation

for legitimate claims." *Odil v. Evans*, 2005 WL 3591962, at *3 (M.D. Ga. Dec. 30, 2005).   There are many factors for a court to consider in awarding fees. However, "the most critical factor" to a reasonable fee "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). And "the amount of damages awarded as compared to the amount sought" in a damages claim is one way to think about the degree of success. *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (internal quotation marks omitted).

Here, Plaintiff's counsel's attorneys' fees and costs are based upon their lodestar through the settlement process and are reasonable given the complex legal theories presented in the case, the amount of resources expended to investigate, research, and analyze Plaintiff's claims, responding to Pre-Hearing Motion Conference request, and negotiating the settlement. Specifically, Plaintiff's counsel has litigated this case since March 2017, which has entailed: investigating the claims, drafting pleadings, drafting and responding to the pre-hearing motion request, attending Plaintiff's deposition, responding to Defendant's written discovery requests, analyzing Defendant's responses to Plaintiff's written discovery requests, attending hearings, negotiating settlement, travelling, researching, writing, and more. The activities undertook in litigating this case and reaching the present agreement were reasonable and necessary.

The fees contained in the settlement agreement are consistent with the lodestar amount. The lodestar amount is the "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). As to the time and labor required for this litigation, attached to this Motion as **Exhibit C** is the Declaration of Robert Cowan (lead counsel for Plaintiff) outlining the attorneys' fees and litigation expenses incurred in this action and the reasonableness of said fees and expense as well as a copy of his firm's retainer agreement (**Exhibit D**). At the time this motion was drafted, Plaintiff's Counsel has expended well in excess of 200 hours litigating this case for a lodestar total of over $63,000.00. (The actual, individual lodestar rates for Plaintiff's counsel are Robert Cowan $350, Philip Goodman $350, and Katie McGregor $175, which are commensurate with fees charged for similar matters in this region.) Plaintiff's counsel has agreed to limit its total fees to 20 percent of Plaintiff's overall recovery (versus the contracted-for 33 1/3 percent or the higher lodestar amount as stated in the retainer agreement (**Exhibit D**)), which means that 20 percent will be deducted for attorneys' fees from both the FLSA settlement amount as well as from the additional consideration that Plaintiff receives as part of the Severance Agreement, noted above.[8] In addition, Plaintiff's counsel advanced reasonable and necessary costs on Plaintiff's behalf throughout the nearly 17-month litigation, including but

---

[8] *See* n.1.

21

not limited to filing fees, deposition costs, expert fees, mediation fees, airfare, and other travel expenses. Such costs do not exceed 17 percent of Plaintiff's overall recovery through the combined FLSA settlement and Severance Agreement. The lodestar attorneys' fee calculation above *alone* greatly exceeds the combination of the 20 percent attorneys' fees and the costs advanced. (Even if the contracted-for contingency rate of 33 1/3 percent had been charged, the attorneys' fees and costs combined would be significantly less than the lodestar fees calculation alone.) Plaintiff believes this to be a reasonable amount. The Sixth Circuit has held that "[a] reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). Moreover, the fees are discounted to account for the fact that on a number of issues, Plaintiff was not successful, including on their Ohio state law claims and conditional certification. In light of all these factors, Plaintiff submits that the attorneys' fees and costs are reasonable and should be approved.

## III.  CONCLUSION

Plaintiff and Defendant agree that the settlement, the terms of which are set forth in **Exhibit A** is a fair and reasonable resolution of a bona fide FLSA dispute. As such, the parties jointly request that this Court approve the settlement and enter the order attached hereto as **Exhibit B**.

**WHEREFORE**, Plaintiff and Defendant respectfully move this Court for entry of an Order (i) **GRANTING** this Motion; (ii) **APPROVING** the settlement of this matter; and (iii) **DISMISSING** this action in its entirety <u>with</u> prejudice and <u>without</u> further costs and fees.

Respectfully Submitted,

/s/ Philip J. Goodman
**PHILIP J. GOODMAN, P.C.**
Philip J. Goodman (P14168)
280 N. Old Woodward Ave., Suite 407
Birmingham, MI 48009
248-647-9300
pjgoodman1@aol.com
Attorney for Plaintiff

/s/ Allan S. Rubin
Allan S. Rubin (P44420)
Daniel C. Waslawski (P78038)
**Jackson Lewis P.C.**
Attorneys for Defendant
2000 Town Center, Suite 1650
Southfield, MI 48322
Phone: (248) 936-1900
Fax: (248) 936-1901
rubina@jacksonlewis.com

/s/ Robert W. Cowan
**BAILEY PEAVY BAILEY COWAN HECKAMAN PLLC**
Robert W. Cowan
5555 San Felipe Street, Suite 900
Houston, Texas 77056
713-425-7100
rcowan@bpblaw.com
Attorney for Plaintiff

23

## **CERTIFICATE OF SERVICE**

I here by certify that on this the 3rd day August, 2018, the above and foregoing was filed electronically via ECF which automatically served same on all counsel of record.


/s/ Robert W. Cowan